CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

NOV 22 2005

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| THOMAS J. HOCKYCKO, <br><br> *Plaintiff,* <br><br> v. <br><br> ENTRODYNE CORP., ET.AL., <br><br> *Defendants.* | CIVIL ACTION No. 6:05cv00025 <br><br><br> MEMORANDUM OPINION <br><br><br> JUDGE NORMAN K. MOON |

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment and Defendant's Motion to Dismiss, both heard before the Court on October 18, 2005. For the following reasons, Plaintiff's Motion is hereby GRANTED and Defendants' Motion is hereby GRANTED IN PART and DENIED IN PART.

BACKGROUND

Plaintiff originally brought this action in the Circuit Court of Fairfax County. His complaint asserted various grounds for relief, including breach of contract, defamation, tortious interference with business relations, fraud, constructive fraud, and after amendment, age discrimination and retaliation. Defendants removed this case to federal court on July 13, 2005 based on federal question jurisdiction.

The issues in this case arise out of Defendants' hiring and firing of Plaintiff. Plaintiff was recruited by Defendant Entrodyne Corporation ("Entrodyne") through Bill Tate, its president and

1

CEO, for the position of Executive Vice President, Sales and Marketing. Tate sent Plaintiff a letter offering him employment and listing the particulars of the offer, which included the statement: "A 12 month severance will be paid in the event that your employment is terminated by the company." The offer also stated that Plaintiff's base salary was to be $160,000 per year. Plaintiff accepted Defendant's offer and worked for Entrodyne for approximately two years.

During his tenure at Entrodyne, Plaintiff accepted a salary reduction to $125,000. Defendant terminated Plaintiff's employment on July 5, 2004. A memo of the same date, which was addressed to Plaintiff from Defendant Nicholas Des Champs, carried the words, "Internal Distribution Only," and offered the reasons for Plaintiff's termination:

> (T)he discovery that you misrepresented that you were still actively employed by Tecumseh when I interviewed you and when Des Champs offered you a job, the failure to meet any reasonable measure of satisfactory performance, your complete lack of desire to learn our industry and products, and your negative influence in recent months.

Ex. 2, Pl.'s Mot. for Summ. J.

Defendant later drafted a memo to "All Des Champs Representatives" describing personnel changes in the company's upper management and stating that Plaintiff was terminated "because of [his] unwillingness to become more involved with the day-to-day activities of our company." Ex.3, Tab 3, Pl.'s Mot. for Summ. J.

Plaintiff's Motion for Summary Judgment rests on his claim that Defendant breached their employment agreement by failing to pay him severance after his termination. Defendant's Motion to Dismiss under Federal Rule 12(b)(6) rests on his argument that Plaintiff has failed to state a claim for defamation and defamation per se based on the two memoranda cited above. The Court will address the parties' motions in turn.

2

# PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## a. Standard of review

Summary judgment under Federal Rule of Civil Procedure 56 is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Terry's Floor Fashions, Inc. v. Burlington Indus., Inc*, 763 F.2d 604, 610 (4th Cir.1985). In considering a motion for summary judgment, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the non-moving party." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (citations omitted).

## b. Discussion

Plaintiff argues that summary judgment is appropriate in this case because there is no dispute as to the meaning of the severance provision in Defendant's offer, and that this offer governs the parties' rights and responsibilities. As Plaintiff notes, this offer imposed no conditions or requirements on the right to receive severance; rather, Plaintiff was entitled to it if the company terminated his employment.

Under Virginia law, the essential elements for a breach of contract claim are (1) a legal obligation owed by the defendant to the plaintiff; (2) the defendant's breach of that obligation; and (3) injury or damage caused by that breach. *Brown v. Harms*, 251 Va. 301, 306 (1996); *Filak v. George*, 267 Va. 612, 619 (2004) (citations omitted). There is no dispute as to the issues surrounding the second and third prongs: Defendants did not pay Plaintiff any severance,

3

resulting in a financial loss to Plaintiff.

Defendants, however, focus on the first prong and argue that the contract is unenforceable because it was fraudulently induced. They maintain that Plaintiff's resume, which stated that he was currently employed by Tecumseh when in fact he was not, misled them. If they had known of Plaintiff's unemployed status, they contend, they would not included the severance provision.

In Virginia, a contract procured by fraud is voidable and may be rescinded. *Metrocall of De., Inc. v. Continental Cellular Corp.*, 246 Va. 365, 373 (1993); *Nationwide Mut. Ins. Co v. Martin*, 210 Va. 354, 357 (1969). Fraud requires an intentional, knowing misrepresentation of a material fact upon which the opposing party has reasonably relied to his detriment. *Metrocall*, 246 Va. at 374. Virginia also recognizes a cause of action for constructive fraud, which requires a false representation of a material fact, whether innocently or negligently made, on which the opposing party relied and thus suffered damages. *See Bank of Montreal v. Signet Bank*, 193 F.3d 818, 826-27 (4th Cir. 1999); *Henderson v. Henderson*, 255 Va. 122, 126 (1998). Constructive fraud must be proved by clear and convincing evidence. *Id.*

Defendants offer no evidence that Plaintiff knowingly misrepresented his employment history. Nor have Defendants shown that Plaintiff actually knew his resume played such a pivotal role in the terms of his employment. Further and most importantly, Defendants cannot show that they reasonably relied on Plaintiff's resume. The evidence demonstrates that Plaintiff had already told Tate that he was unemployed when the employment negotiations began. See. Aff. of Willford Tate ¶¶ 4, 5, Pl.'s Reply in Support of Mot. for Summ. J. [1] As President and CEO of

---

[1] Defendants also argue that they have not had time to confront this line of argument, because Plaintiff's original motion for summary judgment did not mention this affidavit. However, Plaintiff made the same argument regarding his statements to Tate in his original

4

Entrodyne, Tate's knowledge is imputed to the Defendants. *See, e.g., Burruss v. Green Auction & Realty Co.*, 228 Va. 6, 11-12 (1984) (reciting "the familiar maxim" that notice to an agent in matters relating to the subject of the agency is treated as notice to the principal). If Defendants already had notice of Plaintiff's employment history through Tate, then any later reliance on Plaintiff's resume could not be reasonable.

Defendants, however, argue that Tate acted outside the scope of his authority in offering Plaintiff severance, because Entrodyne had a policy against giving severance to unemployed new hires. This argument also fails. Defendants' evidence for such a policy consists of a statement in its Response to Plaintiff's First Set of Interrogatories and an email exchange between Tate and another former Entrodyne employee. Although the employee asked for severance "in variance to the company policy," his request and Tate's response are too nonspecific to offer proof that such a policy existed. Even assuming *arguendo* that the Defendants have shown the existence of such a policy, however, Tate would still have had apparent authority as company president to offer Plaintiff severance. Defendants offer no evidence that Plaintiff knew of this policy, and certainly a company president and CEO who has hired executives in the past can be assumed to have the authority to make compensation decisions. Hence, Defendants' argument that Tate acted outside the scope of his authority fails.

Given this evidence, the Court holds that Plaintiff is entitled to summary judgment on the breach of contract issue. The amount to which Plaintiff is entitled, however, is a separate

---

complaint in state court. See Amended Verified Mot. For J, ¶ 11. Defendants denied this claim in their Answer, so they were certainly on notice of this argument. In addition, Tate's affidavit was signed in July, and would have been available had Defendants sought it in discovery. Defendants do not attack the sufficiency or form of the affidavit, and the Court sees no reason to exclude it from consideration.

question the Court must consider. Plaintiff argues that he should receive $160,000, the amount Defendants originally offered him under the contract; Defendants argue that he should receive only $125,000, his annual salary at the time he was terminated.

Contract interpretation is a matter of law properly determined by the court. *Northwest Airlines v. Metropolitan Washington Airports Auth.*, 924 F. Supp. 704, 708 (1996); *Greater Richmond Civic Recreation, Inc. v. A.H. Ewing's Sons, Inc.*, 200 Va. 593, 596 (1959). The court must first consider whether the language of the contract is ambiguous, which is also a question of law. *Tuomala v. Regent Univ.*, 252 Va. 368, 374 (1996). Language is ambiguous when it "admits of being understood in more than one way or refers to two or more things at the same time." *Amos v. Coffey*, 228 Va. 88, 92 (1984). However, a contract is not ambiguous merely because the parties disagree on its meaning. *Id.* When the parties set out the terms of their agreement in a "clear and explicit writing," then the court adheres to the 'plain meaning rule' and gives the language used its ordinary significance. *Id.* (citations omitted).

The Court finds that the parties' severance agreement is not ambiguous. The plain meaning rule indicates that the 12 month severance provision refers to Plaintiff's current salary, not a past or hypothetical salary. The words "a 12 month severance" indicate that this amount was not fixed at Plaintiff's starting salary; if it were, the parties could have said Plaintiff was entitled to a $160,000 severance. Rather, the provision appears designed to be flexible, adjusting as Plaintiff's earnings adjust. This interpretation is consistent with the offer to pay Plaintiff an "Annual Base Salary" of $160,000. The use of the word "base" suggests that it was possible for Plaintiff to earn more and thus reinforces the apparent flexibility in the severance provision. The Court thus determines that the offer of a "12 month severance" was meant to reflect Plaintiff's

6

earnings at the time of severance and not an amount fixed at the time of hiring. Hence, the Court finds that Plaintiff is entitled to a severance of $125,000 under the contract. It is immaterial that Plaintiff's diminished earnings were meant to be a "temporary" wage adjustment. The agreement makes no provision for "temporary" or "permanent" salaries, and indeed it is unclear how long Plaintiff's "temporary" salary adjustment would have endured had he remained at Entrodyne.

On the issue of Plaintiff's Motion for Partial Summary Judgment, the Court finds that Plaintiff is entitled to summary judgment in the amount of $125,000.

## MOTION TO DISMISS

Defendants move to dismiss under Rule 12(b)(6) arguing that Plaintiff has failed to state a claim for defamation or defamation per se. Specifically, they argue that Plaintiff has not sufficiently alleged publication, that the alleged defamatory statements are protected by a qualified privilege, and that the statements themselves are not defamatory. The Court will address each of these arguments in turn.

### a. Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint and does not resolve contests concerning the facts, the merits of claims, or the applicability of defenses. *See Randall v. United States,* 30 F.3d 518, 522 (4th Cir. 1994). Such motions "should be granted only in very limited circumstances," *Rogers v. Jefferson-Pilot Life Ins. Co.,* 883 F.2d 324, 325 (4th Cir. 1989), and a complaint will survive as long as it sets out sufficient facts for the court to infer that each element of a cause of action is present. *See Wolman v. Tose,* 467 F.2d 29, 33 (4th Cir. 1972). In considering a Rule 12(b)(6) motion, the complaint is to be construed in the light most favorable to the plaintiff and the court is to assume its factual allegations to be true.

*See Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984); *Martin Marietta v. Int'l Tel. Satellite,* 991 F.2d 94, 97 (4th Cir. 1992). "A motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of the claim." *McNair v. Lend Lease Trucks, Inc.,* 95 F.3d 325, 328 (4th Cir. 1996) (*en banc*).

### b. Publication

Defendants argue that Plaintiff's claim should be dismissed because Plaintiff has not sufficiently alleged publication. Under Virginia law, which requires greater detail in its pleadings, this might be true. However, the Federal Rules govern the pleadings in this case. *Hanna v. Plumer,* 380 U.S. 460 (1965).

The Federal Rules require only a short, plain statement of the facts sufficient to give the opposing party notice of the nature of the plaintiff's claim and the grounds on which it rests. Fed. R. Civ. P 8(2)(a); *Jordan by Jordan v. Jackson,* 15 F.3d 333, 339 (4th Cir. 1994) (holding that the plaintiff is not required to allege multiple instances of conduct to show a municipal policy for 42 U.S.C. 1983 purposes). The plaintiff is not required to detail the facts underlying his claims under this standard. *Id.* Neither vagueness nor lack of detail is sufficient ground for granting a motion to dismiss. *Paukstis v. Kenwood Golf & Country Club,* 241 F. Supp. 2d 551, 556 (D. Md. 2003). A motion to dismiss for failure to state a claim must be denied if the facts alleged are sufficient to enable the defendant to draft a responsive pleading. *Jetform Corp. v. Unisys Corp.,* 11 F. Supp. 2d 788 (E.D. Va. 1998).

In addition, the Fourth Circuit has rejected a heightened pleading requirement for defamation cases. Rather, "a defamation complaint, like any other civil complaint in federal

8

court, must provide a short and plain statement of the claim showing that the pleader is entitled to relief . . . sufficient to give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Hatfill v. New York Times Co.*, 416 F.3d 320, 329 (4th Cir. 2005) (citations omitted). Further, the Federal Rules do not require a complaint to describe the Defendant's alleged wrongdoing with any particularity. *Bender v. Suburban Hosp.*, 998 F. Supp. 631 (D. Md. 1998). Indeed, the plaintiff need not plead the facts upon which he bases his claim at all. *See Conley v. Gibson*, 355 U.S. 41, 47-48 (1957).

Given these standards, the Court finds Defendants' argument unpersuasive on this point. Plaintiff alleges that Des Champs published the two memoranda to third parties. Under the Federal Rules' liberal notice pleading standard, he need not provide the particulars of this publication to survive a motion to dismiss.

### c. Privilege

Defendants also argue that a qualified privilege protects the two memoranda under Virginia law. Statements between co-employees and employers regarding employee discipline or discharge may be protected under a qualified privilege where the hearers had some duty or interest in the action. *Larrimore v. Blaylock*, 259 Va. 568, 572 (2000); *Montgomery Ward Co. v. Nance*, 165 Va. 363, 378-80 (1935).

Even if a qualified privilege applied in this case, the Court finds that Plaintiff has made a sufficient allegation of malice to overcome it at this early stage of the proceedings. *See Wuchenich v. Shenandoah Mem. Hosp.*, 215 F.3d 1324, **16 (4th Cir. 2000) (table) (holding that the defendant's claim of immunity under a statute protecting reports to the State Board of Medicine did not protect the defendant "at the early dismissal stage of litigation because the

9

complaint clearly alleges that [defendant] engaged in defamatory conduct in bad faith and with malicious intent.") Although conclusory statements of malice are insufficient to overcome a claim of qualified immunity, a plaintiff can survive a motion to dismiss by pleading facts showing some greater pattern of animus by the defendant. *See Echtenkamp v. Loudon County Pub. Schools*, 263 F. Supp. 2d 1043, 1062 (E.D. Va. 2003) (holding that the plaintiff properly pleaded malice when his complaint alleged facts indicating a larger pattern of retaliation against the plaintiff); *Conley v. Town of Elkton*, No. 5:04cv00030, 2005 U.S. Dist. LEXIS 2602, at *34 (W.D. Va. Feb. 22, 2005) (holding that the allegations in the plaintiff's complaint sufficiently alleged malice where it described the defendant's various attempts to discredit the plaintiff and asserted that the defendant made a statement out of hatred or a desire to injure the plaintiff.)

In this case, the Plaintiff sufficiently alleges malice to overcome a motion to dismiss at this early stage in the proceedings. He alleges that Des Champs acted out of a personal vendetta, that he retaliated against Plaintiff because Plaintiff reported another employee's sexual harassment, and that Des Champs only intended to employ Plaintiff until he had helped the company secure a new lender and then planned to replace him. These facts take the allegation of malice beyond a conclusory statement and preclude an involuntary dismissal at this time. Of course, in order to survive summary judgment, Plaintiff would need to provide a far more factually detailed showing to meet the "clear and convincing evidence of malice" standard. *See Echtenkamp* 263 F. Supp. 2d at 1062-63.

### d. Actionable statements

Defendants finally argue that Plaintiff's claim should be dismissed because the allegedly defamatory statements have insufficient "sting" and are opinion. In order for statements to be

actionable as defamation, they must be factual; opinion statements do not constitute actionable defamation. *Chaves v. Johnson*, 230 Va. 112, 119 (1985). However, statements couched in the form of opinion but implying the existence of facts are treated as fact statements. *Swengler v. ITT Corp. Electro-Optical Prods. Div.*, 993 F.2d 1063, 1071 (4th Cir. 1993). In addition, to be defamatory, a statement must be more than unpleasant or offensive, but must make the plaintiff appear odious, infamous, or ridiculous. *Chapin v. Greve*, 787 F. Supp. 557, 562 (E.D. Va. 1992). A statement may be defamatory per se, however, where it prejudices a person in his business or trade, and specifically where it relates to the skills or character needed in that occupation. *Swengler,* 993 F.2d at 1070-71. In addition, it is a question for the court rather than the jury whether a statement is one of fact or opinion. *American Communications Network v. Williams,* 264 Va. 336, 340 (2002).

The statements at issue in this case are that (1) Plaintiff misrepresented his employment status when he was hired; (2) Plaintiff "failed to meet any reasonable measure of satisfactory performance;" (3) Plaintiff completely lacked desire to learn defendant's industry and products; (4) Plaintiff was a negative influence in recent months; and (5) Plaintiff was unwilling "to become more involved with the day-to-day activities of our company." The Court will briefly consider each of these statements.

The first statement is defamatory per se and clearly has sufficient sting; an allegation that Plaintiff lied to his employers is just the sort of claim that would tend to injure Plaintiff in future business. Further, this statement is objectively provable and is thus not a statement of opinion.

Statements 2 and 4, however, are opinion and thus not actionable as defamation. Statements of unsatisfactory job performance generally do not rise to the level of defamation. *See*

11

*McBride v. City of Roanoke Redevelopment and Housing Auth.*, 871 F. Supp. 885, 891-93 (W.D. Va. 1994) (finding no defamation where the defendant discharged the plaintiff "based on unsatisfactory job performance" and "lack of compatibility" between the plaintiff and defendant). *See also American Communications Network*, 264 Va. at 341 (holding that an allegation that plaintiff "failed to establish effective operations" was a statement of opinion and not actionable). Although statement 2 is somewhat more emphatic than the *McBride* statement, it nonetheless is similar enough to fail to qualify as defamatory.

By the same token, statement 4 is not provably false and cannot be interpreted as stating an actual fact, *Echtenkamp*, 263 F. Supp. 2d 1061. Indeed, Plaintiff's "negative influence" is a relative concept, depending on the speaker's viewpoint, and thus further qualifies as opinion. *See Chaves*, 230 Va. At 118-19 (holding that statements of plaintiff's inexperience and excessive professional fees were relative and thus statements of opinion); *Fuste v. Riverside Healthcare Ass'n*, 265 Va. 127, 132 (2003) ("Statements that are relative in nature and depend largely upon the speaker's viewpoint are expressions of opinion.").

Statements 3 and 5, regarding Plaintiff's unwillingness to become more involved with the company, present a closer question, but are also opinion statements not actionable as defamation. The level of Plaintiff's interest in the day-to-day workings of the company or the industry, like statements of the plaintiff's experience in *Chaves*, are relative and could vary depending on the speaker's perspective. Defamatory statements are those which contain a provable fact, not subjective conclusions about the Plaintiff's state of mind. Plaintiff argues that this statement damages his business or profession by making other companies unwilling to hire him. But defamation does not refer to statements that are merely unpleasant or offensive. *See Chapin*, 787

at 562. This statement may depict the Plaintiff in an unflattering light, but it does not rise to the level of making him appear odious. *See id.* Indeed, statements 3 and 5 refer to Plaintiff's lack of interest in *Defendants'* business, and do not directly impugn Plaintiff's general skills and abilities. Hence, of the five statements offered by Plaintiff, only the statement that Plaintiff misrepresented his employment history is actionable for defamation.

## CONCLUSION

The Court therefore finds that Plaintiff is entitled to summary judgment on his claim of breach of contract. The Court also finds that Defendants are entitled to partial dismissal of Plaintiff's claims for defamation; specifically, Defendants are entitled to dismissal of Plaintiff's defamation claims based on the statements that: Plaintiff failed "to meet any reasonable measure of satisfactory performance;" Plaintiff completely lacked desire to learn defendant's industry and products; Plaintiff was a negative influence in recent months; and Plaintiff was unwilling "to become more involved with the day-to-day activities of our company." An appropriate order shall issue this day.

ENTERED: /s/ Norman Moon
U.S. District Judge

November 22, 2005
Date

13